**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| FUISZ PHARMA LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | C.A. No. 11-1061-CJB |
| v. | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| THERANOS, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**THERANOS, INC.'S ANSWER AND DEFENSES**

Theranos, Inc. ("Theranos"), by its undersigned attorneys, for its answer to the Complaint of Fuisz Pharma LLC ("Fuisz Pharma"), states as follows. This answer is based upon the information currently available to Theranos. Theranos reserves the right to amend this answer to the extent permitted by the Federal Rules of Civil Procedure or the Local Rules upon receipt of additional relevant information or for any other appropriate reason. All allegations in the Complaint are denied unless specifically admitted.

**ANSWER**

1. Denies the allegations of Paragraph 1, except states that Fuisz Pharma brought this action against Theranos alleging infringement of U.S. Patent No. 7,824,612 (the "'612 Patent"). Theranos further states that the '612 Patent was attached to Fuisz Pharma's complaint as Exhibit A.

2. Theranos is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 2, except states that in press releases and other publications issued by Fuisz Pharma, Fuisz Pharma has described itself as an entity with an office in Bay Harbor Islands, Florida.

3. Admits the allegations in Paragraph 3.

4. Paragraph 4 asserts a legal conclusion to which no response is required. To the extent a response is required, Theranos denies the allegations of Paragraph 4.

5. Paragraph 5 asserts a legal conclusion to which no response is required, except Theranos admits that it is a Delaware corporation.

6. Paragraph 6 asserts a legal conclusion to which no response is required.

7. Admits the allegations of Paragraph 7.

8. Denies the allegations in Paragraph 8, except states that the United States Patent and Trademark Office (the "PTO") record (at Reel 027139 and Frame 0079) shows that, on October 27, 2011, Richard Fuisz and Joseph Fuisz purported to assign the '612 Patent to Fuisz Pharma by executing a "conditional assignment."

9. Repeats and re-alleges its answers to Paragraphs 1 through 8 as if fully set forth herein.

10. Denies the allegations in Paragraph 10.

11. Denies the allegations in Paragraph 11, except states that Theranos invented devices that would enable healthcare professionals and pharmaceutical companies to track patients' individual responses to prescribed medicines, painlessly and in real time, throughout the course of treatment, and that Theranos invented a handheld monitor capable of detecting changes in the levels of biochemical markers directly induced by a drug and wirelessly communicating results to medical personnel through a bioinformatics server. Theranos further states that the allegations set forth in Paragraph 11 appear to be based on text from the Theranos website as it was configured in or about 2006.

12. Denies the allegations in Paragraph 12.

13. Denies the allegations in Paragraph 13.

**PLAINTIFF'S PRAYER FOR RELIEF**

Theranos denies that Fuisz Pharma is entitled to any of its requested relief.

**ADDITIONAL DEFENSES**

For further and separate defenses to the causes of action alleged by Fuisz Pharma in the Complaint, and without admitting that it has the burden of proof on any fact, issue, element of a cause of action, or any of these matters, or that anything stated herein is intended or shall be construed as an acknowledgment that any particular issue or subject matter is relevant to Fuisz Pharma's allegations, Theranos alleges as follows. Theranos reserves the right to amend these defenses and to assert additional defenses to the full extent permitted by the Federal Rules of Civil Procedure, the Local Rules, or any other applicable rule.

First Defense

Theranos has not infringed and does not infringe the claims of the '612 Patent.

Second Defense

Fuisz Pharma is barred from asserting infringement under the doctrine of equivalents of one or more patent claims due to prosecution history estoppel.

Third Defense

The claims of the Asserted Patent are invalid, *inter alia*, for failing to comply with one or more of the provisions set forth in the Patent Laws of the United States Code, Title 35, including for failing to meet the conditions of patentability set forth in 35 U.S.C. §§ 102 and/or 103, such as by naming the incorrect inventors on the '612 Patent.

Fourth Defense

The ’612 Patent is invalid due to the inequitable conduct of Richard and Joseph Fuisz before the PTO. That conduct demonstrates that Richard and Joseph Fuisz intended to deceive the PTO into believing that they were the sole inventors of the ’612 Patent. Specifically:

In or about August 2003, Theranos and its founder and CEO, Elizabeth Holmes, retained John Fuisz’s law firm to provide legal services in prosecuting patent applications covering Ms. Holmes’s inventions. Between 2003 and approximately early 2006, John Fuisz’s law firm represented Theranos and Ms. Holmes in the preparation, filing, and prosecution of their domestic and international patent applications, and continued to represent Theranos and Ms. Holmes through October 2008.

During this representation, John Fuisz’s law firm provided legal services to Theranos and Ms. Holmes, including services related to the preparation, filing, and prosecution of patent applications, mainly out of its office located in Washington, D.C., and in so doing reviewed the information and materials that Theranos and Ms. Holmes sent from California in order to prosecute such applications and communicated with Theranos in California.

During John Fuisz’s law firm’s representation of Theranos, its patent attorneys were divided into various groups, including the IP Litigation group and the Patent Prosecution group. All attorneys, in both the IP Litigation group and the Patent Prosecution group, had unfettered access to confidential and proprietary information including to patent application files of Theranos.

Between about August 2003 and early 2006, the work Theranos and Ms. Holmes entrusted to John Fuisz’s law firm included preparing and filing various provisional patent applications on their behalf.

In 2005, as part of its work for Theranos and Ms. Holmes, John Fuisz's law firm drafted and filed several provisional patent applications, including U.S. Provisional Patent Application No. 60/678,801, filed on May 9, 2005; U.S. Provisional Patent Application No. 60/705,489, filed on August 5, 2005; U.S. Provisional Patent Application No. 60/717,192, filed on September 16, 2005; and U.S. Provisional Patent Application No. 60/721,097, filed on September 28, 2005 (collectively, the "Theranos Provisionals"). The Theranos Provisionals are attached hereto as Exhibits A, B, C, and D.

Provisional patent applications provide an applicant with an early filing date, while allowing the applicant to wait up to a year to file a non-provisional patent application with specific claims. The contents of provisional patent applications often contain confidential and proprietary information that ultimately will support the inventor's effort to demonstrate to the PTO that his or her application includes patentable (*i.e.* novel) subject matter.

The Theranos Provisionals included confidential and proprietary information.

In or about early 2006, another law firm took over the preparation, filing, and prosecution of subsequent patent applications.

Theranos and Ms. Holmes filed several patent applications on March 24, 2006 (the "March 24, 2006 Applications") that claim priority to the Theranos Provisionals.

Prior to the publication of the March 24, 2006 Applications in November 2006, the research, technology, and materials disclosed in the Theranos Provisionals were closely guarded and not publicly available. Until publication of the March 24, 2006 Applications, the Theranos Provisionals and the March 24, 2006 Applications themselves were also confidential. The March 24, 2006 Applications were not published until November 16, 2006, at the earliest.

Richard and Joseph Fuisz wrongfully obtained valuable confidential and proprietary information that Theranos and Ms. Holmes had entrusted to John Fuisz's law firm, including both the general knowledge of Theranos's and Ms. Holmes's work and plans and specific information set forth in the Theranos Provisionals, and in other materials submitted in confidence by Theranos and Ms. Holmes to John Fuisz's law firm.

In April 2006, Richard and Joseph Fuisz filed a provisional patent application with the serial number 60/794,117 (the "Fuisz Provisional Patent Application"). The Fuisz Provisional Patent Application is attached hereto as Exhibit E.

The Fuisz Provisional Patent Application ultimately matured into the '612 Patent.

Upon information and belief, John Fuisz furnished Theranos's confidential information, including as set forth in the Theranos Provisionals and related materials and information, to his father and brother, who used the information to file the Fuisz Provisional Patent Application in April 2006.

The Fuisz Provisional Patent Application included material from the non-public Theranos Provisionals, as well as from other confidential documents and data Theranos and Ms. Holmes provided to John Fuisz's law firm in connection with the prosecution of Theranos's and Ms. Holmes's patent applications.

For example, the Fuisz Provisional Patent Application states that the "invention" therein includes "a data reader unit for reading information from a data storage unit, the data storage unit containing stored information concerning a particular drug being or to be taken by the patient."

Theranos Provisional Patent Application No. 60/678,801 specifically describes a reader device that "could transmit the results of the analysis to an external database and is also capable of receiving data from such databases." The same Theranos Provisional Patent Application also

states that "stored information" could be information from the patient's "previous treatment regiment," or "it could be pharmacogenomic data that are of relevance to a particular patient."

The Fuisz Provisional Patent Application also discusses "processing the information concerning the analyte and for sending the processed information to the display, wherein the threshold value is associated with the particular drug being or to be taken by the patient or course of treatment by the patient, the threshold value being one beyond which the display will display an alert."

The same concepts are detailed in the Theranos Provisionals. Specifically, these provisional patent applications describe a bodily fluid analyzer that reads at least one value from the data reader, compares the value with data retrieved from a database, and evaluates whether the comparison exceeded a predetermined threshold value.

Theranos Provisional Patent Application No. 60/678,801, for example, describes a method through which "data can be compared with information stored in databases."

Theranos Provisional Patent Application No. 60/717,192 further expands this concept to make it clear that an "action threshold value" could be used to "determine the optimum therapeutic index for that particular patient or patient class." It further provides that if the "threshold value" were exceeded, "appropriate action" could be taken, such as generating "an alert," including to a healthcare provider.

In addition, Theranos Provisional Patent Application No. 60/678,801, for example, explains "One kind of immediate action" that could be taken if a threshold value were exceeded "could be to provide an emergency alert to the patient's healthcare provider."

Furthermore, Theranos Provisional Patent Application No. 60/717,192 describes "alerting the physician" among other steps that could be taken if a "threshold value" was exceeded.

Theranos Provisional Patent Application No. 60/705,489 further describes displaying information reflective of a comparison of a sensed value with an expected value.

Additional similarities can be found between the concepts and information set forth in the Theranos Provisionals and other of Theranos's and Ms. Holmes's confidential information provided to John Fuisz's law firm and other disclosures in the Fuisz Provisional Patent Application.

The Fuisz Provisional Patent Application, for example, states that "the data storage unit can be a bar code and the data reader can be a bar code reader."

Theranos Provisional Patent Application No. 60/705,489, which predates the Fuisz Provisional Patent Application, describes the concept of using a bar code to read and store information, including where "software allows reading of a barcode on the cartridge" and a "server" can then transmit "a preprogrammed reading based on each cartridge bar code" to a "read-out display."

In addition to the Theranos Provisionals, confidential materials Theranos and Ms. Holmes provided to John Fuisz's law firm also detail novel concepts that later appeared in the Fuisz Provisional Patent Application. One such concept includes making "a diagnostic and therapeutic system" with the ability "to serve as a much sought-after application for PAN or RFID technologies; capitalize on entry into wireless, microchip markets." The term "RFID" stands for "Radio Frequency Identification Device" and refers to the transmission of information by certain radio wave-based wireless technologies.

Correspondingly, the later-filed Fuisz Provisional Patent Application states that "the data storage unit can be a radio frequency receiver identification tag and the data reader a radio frequency receiver," which is an application of "RFID technologies."

Upon information and belief, Richard and Joseph Fuisz did not have the relevant research and development capacity to enable them to invent the key elements of the ’612 Patent.

On November 2, 2010, the PTO issued the ’612 Patent, on which Richard and Joseph Fuisz are identified as inventors. The ’612 Patent was based on the Fuisz Provisional Patent Application of April 2006. The “Fuisz.com” website lists the ’612 Patent among a list of “Fuisz invented United States patents and pending patents.”

The issuance of the ’612 Patent harmed and continues to harm Theranos. For example, because the ’612 Patent covers technology based on Theranos’s confidential information, including the Theranos Provisionals, Theranos’s ability to enjoy exclusively its confidential and proprietary information, and inventions based thereon, has been significantly damaged.

In a press release dated July 2, 2010 concerning the ’612 Patent, Fuisz Pharma stated:

> First, FUISZ announced that it has received a notice of issuance from the United States Patent and Trademark Office for patent claims that cover a direct connection between prescribing physicians and blood analysis devices. The invention allows for the health care provider to set the parameters of allowable analyte levels for each patient and enables simple notifications for any variance out of a pre-determined range. Joseph Fuisz, managing member of FUISZ stated, “These patent claims represents [sic] a quantum leap in the use of portable blood analyzers to provide a higher level of care for patients while reducing burdens on health care providers. ***We are in discussions with the blood analyzer industry for the licensing of this technology***.”

(Emphasis added).

Fuisz Pharma also has announced that it has released or will release products based on the same technology. In a press release dated February 7, 2011, Fuisz Pharma announced that it has created “a new class of microchip”:

> MIAMI, Feb. 7, 2011 /PRNewswire/ -- Based on U.S. Patent 7,824,612 (“Body Fluid Analyzer and System including Same and Method for Programming Same”), Fuisz Pharma today announced

> the use of their patented Technology to create a new class of microchip containing smart tablets that communicate with personal body fluid analyzers.
>
> These tablets wirelessly inform a body fluid analyzer of acceptable analyte values for body fluids, set by the drug company so that the analyzer can provide alerts where the patient's results exceed a threshold value.
>
> Joseph Matus Fuisz, CEO of Fuisz Pharma, states, "We are seeing extraordinarily exciting developments around the use of microchip enabled smart tablets that can wirelessly communicate pertinent information to receiving devices. At the same time, we are seeing further growth in the capabilities of personal body fluid analyzers and a greater appreciation for their use in drug development and personalized medicine. Thus, we see the use of our patent 7,824,612 to enable the value added connection of tablet smart chips together with personal analyzers to convey a broad spectrum of pertinent information. This enhances the function of smart tablets and analyzers alike."

In addition, counsel for Richard and Joseph Fuisz and Fuisz Pharma have represented that at least one "Fortune 100" or "Fortune 500" company has expressed interest in licensing from Fuisz Pharma certain technology relating to the '612 Patent.

On October 26, 2011, Theranos and Ms. Holmes commenced litigation against Richard, Joseph, and John Fuisz in the United States District Court for the Northern District of California. The case is captioned *Theranos, Inc. v. Fuisz Technologies, Ltd.*, 11-CV-05236-EMC (the "California Litigation").

On October 27, 2011, Richard and Joseph Fuisz were served with proper process in the California Litigation. Defendant John Fuisz was served on October 28, 2011. The day after the commencement of the California Litigation—on October 27, 2011—Richard and Joseph Fuisz purported to assign the '612 Patent to Fuisz Pharma. Richard and Joseph Fuisz never were the rightful inventors or owners of the '612 Patent. Therefore, the purported assignment of the '612 Patent to Fuisz Pharma was invalid.

On November 2, 2011, Theranos filed copied claims with the PTO. The copied claims demonstrate that support for each of the claims set forth in the ’612 Patent can be found in Theranos’s specifications.

In sum, at least Elizabeth Holmes and/or another Theranos employee, Timothy Kemp, should have been named inventors of the ’612 Patent. The deception on the PTO by Richard and Joseph Fuisz as to inventorship of the ’612 Patent was material for at least two reasons. First, they knowingly submitted false declarations to the PTO during the prosecution of the ’612 Patent application. In or about September 2007, Richard and Joseph Fuisz each submitted a “Declaration and Power of Attorney for Patent Application” to the PTO. In that Declaration, Richard and Joseph Fuisz falsely declared that they were the “original, first, and joint” inventors of the “subject matter which is claimed and for which a patent is sought” in the ’612 Patent’s application. Second, if the PTO had known that Elizabeth Holmes and/or Timothy Kemp should have been listed as inventors or that various claimed limitations from the ’612 Patent were misappropriated from Theranos, it would not have issued the ’612 Patent.

<u>Fifth Defense</u>

Fuisz Pharma’s claims are unenforceable under the doctrine of unclean hands.

<u>Sixth Defense</u>

Fuisz Pharma lacks standing to pursue this litigation because the purported assignment from Richard and Joseph Fuisz to Fuisz Pharma was invalid *ab initio*. Richard and Joseph Fuisz were misjoined as inventors of the ’612 Patent and had no interest in the ’612 Patent which they could assign. The purported assignment was also a fraudulent conveyance to avoid Theranos’s lawsuit filed in the Northern District of California the day before the purported assignment.

**JURY TRIAL DEMAND**

Theranos hereby demands a trial by jury on all issues triable to a jury.

Respectfully submitted,

POTTER ANDERSON & CORROON LLP

By: *_/s/ David E. Moore_*
Richard L. Horwitz (#2246)
David E. Moore (#3983)
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, DE 19801
Tel: (302) 984-6000
rhorwitz@potteranderson.com
dmoore@potteranderson.com

*Attorneys for Defendant Theranos, Inc.*

OF COUNSEL:

BOIES, SCHILLER & FLEXNER LLP

David Boies
William D. Marsillo
333 Main Street
Armonk, New York 10504
Tel: (914) 749-8200

Eric J. Maurer
5301 Wisconsin Ave. NW
Washington, DC 20015
Tel: (202) 237-2727

Vincent Y. Liu
575 Lexington Avenue
New York, New York 10022
Tel: (212) 446-2300

Dated: January 6, 2012
1041776 / 38570

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

## CERTIFICATE OF SERVICE

I, David E. Moore, hereby certify that on January 6, 2012, the attached document was electronically filed with the Clerk of the Court using CM/ECF which will send notification to the registered attorney(s) of record that the document has been filed and is available for viewing and downloading.

I further certify that on January 6, 2012, the attached document was Electronically Mailed to the following person(s):

Karen Jacobs Louden
Michael J. Flynn
Morris, Nichols, Arsht & Tunnell LLP
1201 North Market Street
Wilmington, DE 19899
klouden@mnat.com
michael.flynn@mnat.com

John R. Fuisz
Sudip Kundu
The Fuisz-Kundu Group LLP
1455 Pennsylvania Avenue, NW
Suite 400
Washington, DC 20004
jfuisz@FuiszKundu.com
skundu@FuiszKundu.com

By: */s/ David E. Moore*
Richard L. Horwitz
David E. Moore
POTTER ANDERSON & CORROON LLP
Tel: (302) 984-6000
rhorwitz@potteranderson.com
dmoore@potteranderson.com

1037913/38570