## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| FUISZ PHARMA LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   Civil Action No. 11-1061-SLR-CJB |
| | ) |
| THERANOS, INC., | ) |
| | ) |
| Defendant. | ) |

### REPORT AND RECOMMENDATION

Plaintiff Fuisz Pharma LLC ("Fuisz Pharma" or "Plaintiff") filed this action for patent

infringement against defendant Theranos, Inc. ("Theranos" or "Defendant"). Presently pending

before the Court is Defendant's motion to dismiss, stay, or transfer ("Motion"). (D.I. 14) For the

reasons that follow, I recommend that Defendant's Motion be GRANTED-IN-PART and that

this Court transfer the case to the United States District Court for the Northern District of

California.

## I.      BACKGROUND

### A.      The Parties

Fuisz Pharma is a Delaware limited liability company with its principal place of business

in Bay Harbor Islands, Florida. (D.I. 1 at ¶ 2) Theranos is a Delaware corporation with its

principal place of business in Palo Alto, California. (D.I. 1 at ¶ 3; D.I. 18 at ¶ 3)

### B.      Procedural Background

On October 26, 2011, Theranos and its founder, Elizabeth Holmes ("Holmes") filed a

lawsuit in the United States District Court for the Northern District of California (the "California

Court" or the "Northern District"). The suit was filed against Fuisz Technologies, Limited

("Fuisz Technologies"), and several members of the Fuisz family (hereinafter referred to as "the Fuisz individuals"): (1) John Fuisz, a former member of Fuisz Technologies' board of directors; (2) Richard C. Fuisz, father of John Fuisz and founder of Fuisz Technologies; and (3) Joseph M. Fuisz, brother of John Fuisz, son of Richard Fuisz, and a managing member of Fuisz Technologies. (D.I. 15 at 1; D.I. 17, ex. 1 at ¶¶ 4-7); *see also Theranos, Inc. v. Fuisz Techs., Ltd.*, Case No. 4:11-CV-05236-YGR (the "California Action").

Eleven claims for relief were asserted in the original California Complaint—two inventorship claims under the Patent Act, and nine state law claims.[1] All of the claims were based on the same factual premise: that defendants allegedly misappropriated Theranos' and Holmes' confidential information and used that information to obtain U.S. Patent No. 7,824,612 (the "'612 patent").[2] (D.I. 17, ex. 1) More specifically, the California Complaint alleged that from 2003 to 2006, when he worked at a Washington, D.C.-based law firm that represented Theranos and Holmes, John Fuisz took confidential information provided to the firm by Theranos and gave it to Richard and Joseph Fuisz. Richard and Joseph Fuisz, in turn, are alleged to have wrongfully used the information to obtain the '612 patent, without crediting Theranos and Holmes as the true inventors. (*Id.* at ¶¶ 12–72) By their inventorship claims, Theranos and Holmes sought to have Holmes and another man, Timothy Kemp, added as inventors on the '612

---

[1]     The original California Complaint included two inventorship claims pursuant to 35 U.S.C. § 256 (for "nonjoinder" and "misjoinder"), and state law claims of breach of fiduciary duty, aiding and abetting breach of fiduciary duty, legal malpractice, unjust enrichment/restitution, constructive trust, unfair competition/unfair business practices, breach of contract, aiding and abetting and inducing breach of contract, and civil conspiracy. (D.I. 17, ex. 1 at ¶¶ 75-121)

[2]     The '612 patent is entitled "Bodily Fluid Analyzer, and System Including Same and Method for Programming Same" and lists Richard and Joseph Fuisz as inventors.

2

patent and to have Richard Fuisz and Joseph Fuisz removed as inventors. (*Id.* at ¶¶ 63-74 & p. 21)

On October 27, 2011, the same day that they were served with the original Complaint filed in the California Action, Richard and Joseph Fuisz executed a conditional assignment of the '612 patent to Fuisz Pharma, an entity that they allegedly control. (D.I. 15 at 1-2) Four days later, on November 1, 2011, Fuisz Pharma commenced the instant action, asserting that Theranos has infringed the '612 patent. (D.I. 1) On January 6, 2012, Theranos filed the instant Motion, seeking to have this action dismissed, transferred to the Northern District, or stayed pending resolution of the California Action, on the grounds that the California Action is a "first-filed" action. (D.I. 14)

On the same day, January 6, 2012, Theranos also filed an Answer to the Complaint in this Court, which includes a statement of its defenses. (D.I. 18) Six defenses are listed, including a First Defense of non-infringement. Among the other listed defenses is the Third Defense, which asserts that the patent is invalid for various reasons, including "for failing to meet the conditions of patentability set forth in 35 U.S.C. §§ 102 and/or 103, such as by naming the incorrect inventors on the '612 patent." (*Id.* at 3) The Fourth Defense states that the patent is invalid due to the inequitable conduct of Richard and Joseph Fuisz before the Patent and Trademark Office ("PTO"). In describing the merits of this defense, Theranos repeats its assertions regarding the alleged misappropriation of confidential information by the Fuisz individuals and their alleged use of that information to obtain the '612 patent. (*Id.* at 4-11) A Sixth Defense asserts that Fuisz Pharma lacks standing to pursue the litigation. This defense is based on the claim that the purported assignment of the '612 patent to Fuisz Pharma by Richard and Joseph Fuisz was void,

3

*inter alia*, because the Fuiszs were misjoined as inventors to that patent as a result of their alleged misconduct before the PTO. (*Id.* at 11)

The Fuiszs' assignment of the '612 patent to Fuisz Pharma after commencement of the California Action had ramifications in that case. After learning that the patent had been so assigned, Theranos and Holmes filed a motion to substitute Fuisz Pharma for Fuisz Technologies. (California Action, D.I. 24)  On January 10, 2012, the California Court denied that motion, and instead joined Fuisz Pharma to the California Action. (California Action, D.I. 49 at 4-5)  Additionally, in light of the fact that Theranos and Holmes had indicated that they intended to dismiss Fuisz Technologies from the suit, the California Court ordered that Theranos and Holmes file an Amended Complaint clarifying their allegations. (*Id.*)

On February 9, 2012, Theranos and Holmes filed an Amended Complaint in the California Action. (California Action, D.I. 53)  The Amended Complaint is modified to direct claims against the Fuisz individuals and Fuisz Pharma (it does not list Fuisz Technologies as a party). In addition to inventorship claims, the Amended Complaint also asserts claims seeking a declaratory judgment that the '612 patent is unenforceable due to inequitable conduct and invalidity. (*Id.* at ¶¶ 95-104)  The inequitable conduct allegation is premised on the same previously-referenced assertion that Richard and Joseph Fuisz committed inequitable conduct before the PTO when they falsely claimed that they were the inventors of the '612 patent, when, in fact, they knew that Holmes and Kemp were the true inventors. (*Id.*)  The assertion of invalidity includes a claim—using identical language to that of the Third Defense in the instant case—that the patent "fail[s] to meet the conditions of patentability set forth in 35 U.S.C. §§ 102 and/or 103, including by naming the incorrect inventors on the '612 patent." (*Id.* at ¶ 104)  The

4

remainder of the Amended Complaint sets forth eight additional state law claims, which largely

mirror the nature of the state law claims raised in the initial Complaint in that case.[3] (*Id*. at ¶¶

105-53) Each of these state law claims are also premised on the same allegations regarding the

Fuisz individuals' alleged misconduct in obtaining the '612 patent—identical allegations to those

set forth in the Fourth Defense in the instant case.

On March 9, 2012, Joseph Fuisz, Richard Fuisz and Fuisz Pharma moved to dismiss all

of the claims in the Amended Complaint filed in the California Action.[4] (California Action, D.I.

65) Oral argument on the motion was held in the California Court on April 24, 2012.

(California Action, D.I. 78) The motion is currently pending before that Court.

On April 25, 2012 this Court held oral argument on the instant Motion. The Motion is

therefore ripe for resolution.

## II. DISCUSSION

### A. The "First-Filed" Rule

#### 1. Standard of Review

The Federal Circuit has adopted what is known as the "first-filed" rule in patent cases.

That Court has explained that it prefers "to apply in patent cases the general rule whereby the

forum of the first-filed case is favored, unless considerations of judicial and litigant economy and

---

[3]     These include claims for unjust enrichment/restitution, breach of fiduciary duties,
aiding and abetting and inducing breach of fiduciary duties, legal malpractice, unfair
competition/unfair business practice, breach of contract, inducing breach of contract/tortious
interference with contractual relations, and civil conspiracy. (California Action, D.I. 53) The
only state law claim that was pled in the original Complaint in the California Action that is not
listed in the Amended Complaint is a claim for constructive trust.

[4]     On February 27, 2012, John Fuisz filed his own motion to dismiss the claims
against him. (California Action, D.I. 62)

the just and effective disposition of disputes, require otherwise." *Genentech, Inc. v. Eli Lilly and Co.*, 998 F. 2d 931, 937 (Fed. Cir. 1993), *rev'd on other grounds, Wilton v. Seven Falls Co.*, 515 U.S. 277 (1995). If applied, the rule counsels that a later-filed action involving the same controversy should be dismissed, transferred, or otherwise enjoined in favor of the first-filed action. *See id.* at 938. Adoption of this rule serves to "prevent a multiplicity of actions and to achieve resolution in a single lawsuit of all disputes arising from common matters." *Corixa Corp. v. IDEC Pharm. Corp.*, No. Civ. A. 01-615-GMS, 2002 WL 265094, at \*1 (D. Del. Feb. 25, 2002) (citing *Genentech*, 998 F.2d at 937). Exceptions to the rule are not rare and are made when justice or expediency requires, though there must be "sound reason that would make it unjust or inefficient to continue the first-filed action." *Genentech*, 998 F.2d at 938. "Such reason may be the convenience and availability of witnesses, or absence of jurisdiction over all necessary or desirable parties, or the possibility of consolidation with related litigation, or considerations relating to the real party in interest." *Id.*

The Third Circuit has also long recognized the first-filed rule. *E.E.O.C. v. Univ. of Pa.*, 850 F.2d 969, 971 (3d Cir. 1988) (citing *Crosley Corp. v. Hazeltine Corp.*, 122 F.2d 925, 929 (3d Cir. 1941)). It has explained that the rule "encourages sound judicial administration and promotes comity among federal courts of equal rank" by giving courts "the power to enjoin the subsequent prosecution of proceedings involving the same parties and the same issues already before another district court." *E.E.O.C.*, 850 F.2d at 971 (internal quotation marks and citations omitted). The purpose of the rule is "to avoid burdening the federal judiciary and to prevent the judicial embarrassment of conflicting judgments." *Id.* at 977; *see also Freedom Mortg. Corp. v. Irwin Fin. Corp.*, C.A. No. 08-146-GMS, 2009 WL 763899, at \*4 (D. Del. Mar. 23, 2009)

6

(noting that the rule is intended to "avoid differing outcomes on the same issue by two sister courts, thereby minimizing duplicative litigation in different fora, and saving judicial resources"). A court may exercise its discretion and decide to depart from the rule, but it should do so only in rare or extraordinary circumstances, such as cases involving inequitable conduct, bad faith or forum shopping, or in cases where the second-filed action has developed further than the initial suit. *E.E.O.C.,* 850 F.2d at 976; *Freedom Mortgage*, 2009 WL 763899, at *4.[5]

### 2.   Applicability of the Rule

Theranos argues that this action should be dismissed, stayed, or transferred pursuant to the first-filed rule because it filed the California Action prior to Fuisz Pharma's filing of the instant litigation, and because the California Action involves the same parties and subject matter as this action. (D.I. 15 at 8-10) In support of its position, Theranos relies on the fact that certain legal and factual issues involving the '612 patent—particularly those of inventorship, invalidity and inequitable conduct—are before both courts, which creates the risk of inconsistent judgments

---

[5]         Neither party addresses whether Federal Circuit law or the law of the regional circuit (here, the Third Circuit) applies to the analysis of whether the California Action is first-filed. "Although courts hearing patent cases must apply 'the procedural law of the regional circuit in matters that are not unique to patent law, . . . the regional circuit practice need not control when the question is important to national uniformity in patent practice.'" *Thales Airborne Sys. S.A. v. Universal Avionics Sys. Corp.*, No. Civ. 05-853-SLR, 2006 WL 1749399, at *4 (D. Del. June 21, 2006) (quoting *Lab. Corp. of Am. Holdings v. Chiron Corp.*, 384 F.3d 1326, 1330 (Fed. Cir. 2004)). In a different, though related, context to that of the instant case, the Federal Circuit has held that its law applies to "'injunctions arbitrating between co-pending patent declaratory judgment and infringement cases in different districts.'" *Id.* (applying Federal Circuit law to first-filed analysis in such a circumstance) (quoting *Lab. Corp. Of Am. Holdings*, 384 F.3d at 1331). Although the Federal Circuit and Third Circuit describe the applicability of the first-filed rule and its exceptions using different terminology, the basic underlying purpose of the rule is the same in both jurisdictions. I need not resolve the issue as to which Circuit's law applies in the particular circumstances of this case, in that the outcome of my analysis of the rule's applicability would be the same under either court's precedent.

7

were both cases to proceed. (*Id.*; D.I. 23 at 3)  Additionally, Theranos argues that the resolution

of the California Action in its favor will moot this action entirely, as if Theranos prevails in the

Northern District on its claims, Fuisz Pharma will no longer have standing to assert an

infringement claim in this jurisdiction. (D.I. 15 at 9; D.I. 23 at 3)

Fuisz Pharma opposes Theranos' Motion, asserting that the first-filed rule is simply not

applicable to this case.  In its briefing, Fuisz Pharma argues that this is so because the California

Action "does not involve the same issues and/or the same parties as this infringement litigation."

(D.I. 20 at 1)  It asserts that while this case is a "straight forward patent infringement action,"

other legal claims are at issue in the California Action, rendering the two cases distinctly

different.  (D.I. 20 at 1)

Under the particular circumstances of this case, I recommend that this Court find that the

"first-filed" rule applies and that the California Action be considered the "first-filed" action.  I

make this recommendation for the four reasons set forth below.

First, all of the parties in this action are parties to the California Action.  Although the

first-filed rule does not require exact identity of parties among the two cases-at-issue, *Time

Warner Cable, Inc. v. GPNE Corp.*, 497 F. Supp. 2d 584, 589 (D. Del. 2007), this Court has

noted that "in many cases where courts have used their discretion to decline to follow the first-

filed rule, it is because the parties in the first-and-later-filed actions were different," *Sonion

Nederland BV v. Asius Tech. LLC*, Civil No. 11-67 (RBK/KMW), 2011 WL 5826047, at *4 (D.

Del. Nov. 18, 2011).  It is understandable that courts analyzing whether the first-filed rule applies

would consider whether there is overlap among the parties in both cases.  For example, were a

party in a later-filed action not involved in the earlier-filed case, that party might be able to

8

credibly claim that the two cases do not involve the same subject matter. The absence of such a party from the earlier-filed action may well underscore the fact the first action involves distinctly different legal and factual claims from those in the later-filed action.

In the instant case, the two parties (Fuisz Pharma and Theranos) are also parties in the California Action. In its briefing, when arguing that the first-filed rule should not apply, Plaintiff placed emphasis on the fact that the original Complaint in the California Action "names four defendants not parties to this suit." (D.I. 20 at 8; *see also id.* at 1). However, although Fuisz Pharma was not named in the original Complaint in the California Action, the Amended Complaint in that case added Fuisz Pharma as a defendant (and dropped Fuisz Technologies as a party). It is true that the Fuisz individuals are named in the California Action, while in this case, they are not listed as plaintiffs. However, it is beyond dispute that all three Fuiszs, whether listed as parties or not, are factually implicated to a significant degree in both matters. Indeed, at oral argument, Plaintiff's counsel acknowledged that in light of Fuisz Pharma's inclusion in the California Action, any asserted difference between the parties in the cases would have little relevance to its argument that the California Action was not a first-filed case. (D.I. 30 at 68)

Second, both cases involve one patent—the '612 patent. This Court has noted that "the Federal Circuit has a strong preference for adhering to the first-filed rule" in actions involving the same patents. *Thales Airborne,* 2006 WL 1749399, at *4. Indeed, the judges of this Court have tended to adhere to the first-filed rule in circumstances where the patents-in-suit among the cases were the same, while often declining to find the rule implicated when the earlier-filed case

involved different patents than the later-filed case.[6] This trend is unsurprising, as the presence of additional or different patents in another litigation indicates that, at a minimum, the two matters will address different inventions. It may also mean that the cases will implicate different technologies. In such a circumstance, the "subject matter" of the two cases may well differ significantly. In contrast, here both cases involve the same patent–one directed toward a bodily fluid analyzer—and thus will implicate the same claims, the same (disputed) inventors, the same prosecution history and much of the same underlying factual narrative.

Third, although the legal claims asserted in the two suits are not the same, those claims stem, to a very great degree, from the same subject matter and same nucleus of operative facts. In both actions, legal issues regarding the inventorship, validity, and enforceability of the '612 patent will be contested. The facts relating to Theranos' allegation that John Fuisz stole its confidential information and gave it to Richard and Joseph Fuisz (who in turn used it to obtain the '612 patent) will be at issue in both cases—as to all of the claims in the California action and as to Theranos' invalidity, inequitable conduct and standing-related defenses in the instant action.

---

[6]     *Compare GPNE Corp.*, 497 F. Supp. 2d at 589-90 (finding that because the two cases "both involve the same facts and the same patent," the first-filed rule applied and the later-filed cased should be dismissed); *Thales Airborne*, 2006 WL 1749399, at *4 (applying the first-filed rule to enjoin later-filed declaratory judgment action in District of New Jersey, but only with regard to the two of the four patents at issue in the District of New Jersey case that were also at issue in the earlier-filed infringement action in the District of Delaware); *with Cellectis S.A. v. Precision Biosciences, Inc.*, Civ. No. 11-173-SLR, 2012 WL 1556489, at *8 (D. Del. May 3, 2012) (declining to apply first-filed rule to District of North Carolina action filed prior to the District of Delaware action, where the North Carolina action involved two different patents than the patent at issue in the Delaware case); *Abbott Lab. v. Johnson & Johnson, Inc.*, 524 F. Supp. 2d 553, 557-58 (D. Del. 2007) (declining to apply first-filed rule because, *inter alia*, the cases at issue "involve different patents"); *APV N. Am. v. Sig Simonazzi N. Am., Inc.*, 295 F. Supp. 2d 393, 397-98 (D. Del. 2002) (declining to apply first-filed rule because later-filed matter involved two additional patents, and thus additional technology, than that implicated in earlier-filed action).

10

The related allegation that Richard and Joseph Fuisz are not the true inventors of the '612 patent

is similarly relevant to all of the claims of the California Action and many of Theranos' defenses

in the instant case.  In both actions, there will likely be extensive discovery regarding the process

leading to the invention of the '612 patent, the prosecution of the patent, and the conduct of the

Fuisz individuals relevant to the patent's prosecution. And in both, construction of the claim

terms of the '612 patent may be necessary.  It is the pervasive commonality of facts and legal

issues among the actions that makes them inextricably intertwined, rendering their subject matter

sufficiently related to merit invocation of the first-filed rule.

Fuisz Pharma argues that the first-filed rule should not apply because its claim of

infringement of the '612 patent is before this Court, but is not squarely before the California

Court (at least, not at this time).[7]  Relatedly, Fuisz Pharma also appears to assert that in the patent

arena, the first-filed rule should only be invoked in so-called "mirror image" cases—cases where

a patent infringement suit is brought in one jurisdiction and a declaratory judgment action as to

non-infringement of the same patent is filed in another.  (D.I. 20 at 10)[8]  Both of these arguments

confront the same issue: how closely must the subject matter of the earlier-filed case be aligned

---

[7]     At oral argument, the Court asked counsel for Fuisz Pharma whether, in light of
the fact that the Amended Complaint in the California Action seeks a declaratory judgment that
the '612 patent is invalid and unenforceable, Fuisz Pharma's infringement claim is a compulsory
counterclaim that must be raised in that action, pursuant to Federal Rule of Civil Procedure
13(a).  (D.I. 30 at 70-71)  Plaintiff's counsel noted that this was an "interesting question," but
said that Fuisz Pharma did not believe that such a counterclaim would be compulsory.  (D.I. 30 at
70)

[8]     It is true, as Fuisz Pharma notes, that a number of the patent cases in which this
Court has invoked the first-filed rule have involved this factual scenario. *See, e.g.*, *Comcast
Cable Communications, LLC v. USA Video Tech. Corp.*, Civil Action No. 06-407-JJF; 2008 WL
1908612, at *1-2 (D. Del. Apr. 29, 2008); *Time Warner Cable, Inc. v. USA Video Tech Corp.*,
520 F. Supp. 2d 579, 580-81, 586 (D. Del. 2007); *GPNE Corp.,* 497 F. Supp. 2d at 585-86, 589.

11

to that of the later-filed case for the first-filed rule to be applicable?

The Federal Circuit has cautioned against a "'rigid mechanical'" approach to questions of forum, stressing instead the importance of conserving judicial resources and comprehensively disposing of litigation. *Genentech*, 998 F.2d at 938 (quoting *Kerotest Mfg. Co. v. C-O-Two Fire Equip. Co.*, 342 U.S. 180, 183 (1952)). Indeed, in analyzing the applicability of the first-filed rule in patent cases, our Court has emphasized that the focus is on whether the same common subject matter exists among the two cases, not whether the legal claims at issue are identical. *GPNE Corp.*, 497 F. Supp. 2d at 589-90.[9]

In that spirit, this Court has applied the first-filed rule in patent cases to other than so-called "mirror image" cases. For example, in *Sonion Nederland BV v. Asius Tech. LLC*, Civil No. 11-67 (RBK/KMW), 2011 WL 5826047, at *4 (D. Del. Nov. 18, 2011), this Court applied the rule to transfer a breach of contract action involving the parties' respective patent rights to the Northern District of Illinois. In the breach of contract action, plaintiff Sonion Nederland BV ("Sonion") alleged that defendant Asius Technologies LLC ("Asius") violated the terms of a Joint Development Agreement ("JDA") between the parties relating to certain technology involving hearing aids, including depriving Sonion of certain patent rights it was entitled to under the JDA. *Id*. at *1-5. However, prior to the filing of the breach of contract action, Asius had filed suit in the Northern District of Illinois, seeking a declaratory judgment that it did not

---

[9]     *Cf. Freedom Mortgage*, 2009 WL 763899, at *4 (noting, in non-patent case, that for the first-filed rule to apply, "[c]omplete identity of the parties and issues . . . is not required."); *Dippold-Harmon Enter., Inc. v. Lowe's Companies, Inc.*, No. 01-532-GMS, 2001 WL 1414868, at *1, *5 (D. Del. Nov. 13, 2001) (finding, in non-patent case, first-filed rule applied where both actions involved different legal claims involving different contractual agreements, because both cases involved "different facets of the same business relationship between the parties").

12

infringe certain of Sonion's patents—patents that were a part of the intellectual property covered by the JDA. *Id*. at \*3. In deciding to transfer the breach of contract case to the Northern District of Illinois, this Court rejected the plaintiff's argument that the first-filed rule did not apply to the Northern District of Illinois case because the two actions were not "truly duplicative." *Id*. at \*4 (quotation marks omitted). Instead, this Court found it appropriate to apply the rule because "despite the fact that [the first case] is framed as a patent infringement action while the [second case] is framed as a breach of contract issue, it is clear that the focus of each case is the intellectual property rights related to [the parties' JDA]." *Id*. at \*4. Because both cases implicated the issue of whether Sonion owned the rights to certain technology that Asius was claiming as its own, "the decision rendered in this Court would determine the outcome [in the other suit] and the opposite is true as well [which is] precisely the result that the first-filed rule is intended to avoid." *Id*.[10]

Additionally, at least one other federal court has determined that competing actions involving inventorship and infringement claims as to the same patent were sufficiently similar to justify invocation of the first-filed rule. In *Victor Co., L.L.C. v. Ortho Organizers, Inc.*, 932 F. Supp. 261 (D. Kan. 1996), the plaintiff filed an action in Kansas for infringement of U.S. Patent 5,399,087 (the "'087 patent") against defendant Ortho Organizers. Two months later, Ortho Organizers filed suit against plaintiff in the Southern District of California, seeking (1) correction of the named inventor on the '087 patent pursuant to Section 256 to include its former employees

---

[10]     This Court has also applied the first-filed rule in other circumstances where the two patent cases-at-issue were not "mirror images" of each other. *Corixa Corp.*, 2002 WL 265094, at \*1-2 (finding first-filed rule applicable where earlier-filed declaratory judgment action in Southern District of California involved six patents, whereas later-filed patent infringement suit in this District involved only three of those patents).

and consultants as claimed co-inventors and (2) a declaratory judgment that it has an implied

license to the device in question. *Id.* at 262. The plaintiff sought to enjoin the second action

under the first-filed rule. *Id.* at 263. Finding the two suits to be similar, the court applied the

first-filed rule and enjoined the second suit:

> The court concludes that resolution of the present suit would be necessarily dispositive of
> the issues of inventorship of the patent and shop rights raised in the California action.
> Ortho's causes of action are part and parcel of the patent infringement action presently
> before this court. The plaintiff's choice of forum in the first-filed suit is entitled to great
> weight and should not be disturbed absent a strong showing by defendant. Defendant
> should not be allowed to manipulate the forum by commencing a separate action in
> California when the causes of action asserted involve the same patent at issue in the
> present action and can be resolved in the single suit before this court.

*Id.* at 264 (citations omitted).

The Court finds the decisions in *Sonion Nederland* and *Victor* to be instructive. As in

those cases, here although the legal claims-at-issue among the two suits are not identical, they

are, for the reasons set forth above, extremely similar. Understanding that the first-filed rule is

meant to "prevent[] a multiplicity of actions and to achieve resolution in a single lawsuit of all

disputes arising from common matters," *Genentech*, 998 F. 2d at 938 (internal citations and

quotation marks omitted), I believe that Federal Circuit (and Third Circuit) precedent dictates

that these two cases involve the types of "common matters" that should be resolved in one

jurisdiction.

Fourth, application of the first-filed rule is also warranted here because if both actions

were allowed to proceed simultaneously, there would be a substantial risk of inconsistent

judgments. Though Fuisz Pharma correctly asserts that "a judgment *in favor of the Fuisz*

*defendants* in California would not affect the outcome of this litigation" and that "a judgment *in*

14

*favor of Fuisz Pharma* here will not affect the outcome of the California Litigation," this observation does not address the prospect of judgments *against* the Fuisz defendants in California, which would certainly affect the outcome of these proceedings. (D.I. 20 at 9-10) If the California Court enters a judgment directing that Theranos' agents or assignees be added as inventors to the '612 patent, that would render Fuisz Pharma's infringement claim here virtually moot. *See* 35 U.S.C. § 262 (stating that a joint owner of a patent is permitted to practice the patent without consent of other owners); *Pannu v. Iolab Corp.*, 155 F.3d 1344, 1349 (Fed. Cir. 1998) (if non-joinder of an actual inventor is proven, a patent is rendered invalid); *QBAS Co., Ltd. v. C Walters Intercoastal Corp.*, No. SACV 10-406 AG (MLGx), 2010 WL 7785955, at *7 (C.D. Cal. Dec. 16, 2010) (noting, in inventorship/infringement dispute that "if [president of alleged infringing company] is an omitted inventor, either (1) without correction, the '779 Patent is invalid, or (2) with correction, [the alleged infringer] has a right to use the invention, and Plaintiffs may not sue [the alleged infringer]."). Similarly, were both cases allowed to proceed, there could well be parallel and potentially inconsistent determinations of validity and enforceability by this Court and the California Court. While the Court understands Fuisz Pharma's point that the matters *could* proceed in such a way as to have no inconsistent judgments, the real risk of inconsistent judgments is clearly present here.

### 3.   Exceptions to the First-filed Rule

After determining that the first-filed rule applies to the California Action, a court should assess whether any exceptions to the rule apply that would "make it unjust or inefficient to continue the first-filed action." *Genentech*, 998 F.2d at 938; *see also Cellectis,* 2012 WL 1556489, at *4. Fuisz Pharma does not explicitly suggest that any such exception is applicable,

15

instead having focused its argument exclusively on the applicability of the rule in the first place. Nor does the Court perceive such an exception to be applicable here.

### 4. Conclusion

If the California Action and this matter were both permitted to go forward, what is predominantly the same case (with the same basic subject matter) would proceed simultaneously in two federal courts. This is the outcome that the first-filed rule was meant to prevent. For that reason, and for all of the other reasons set forth above, I recommend that the Court find that the California Action is the "first-filed" action.

## B. Determining Whether the Instant Case Should Be Stayed, Dismissed, or Transferred

Once a court determines that the first-filed rule applies, and that no exception to the rule is implicated, the court has the option to either stay, dismiss or transfer the instant action pursuant to Section 1404(a). *Sonion Nederland*, 2011 WL 5826047, at *3; *cf. Freedom Mortgage*, 2009 WL 763899, at *5. Theranos seeks dismissal of the case, or, in the alternative, that it either be transferred to the California Court or stayed. (D.I. 15 at 20) Fuisz Pharma suggests that even if Theranos' motion is not denied, at most, the case should be stayed. (D.I. 20 at 19)

### 1. Motion to Transfer

In my view, a determination as to the appropriate disposition of this case first depends on whether the proposed transferee venue (the Northern District) would be an appropriate forum for this litigation. If it is not, this would narrow the number of appropriate options that I should consider as to the disposition of the instant case. As a result, I will first consider the legal

16

standard applicable to a motion to transfer.

Section 1404(a) of Title 28 provides the statutory basis for a transfer inquiry. It provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a).

### a.     Appropriateness of Transferee Venue

The first step in the transfer analysis is to determine whether this action could have been brought in the proposed transferee venue. "The party moving for transfer bears the burden of proving that the action properly could have been brought in the transferee district in the first instance." *Mallinckrodt Inc. v. E–Z–Em, Inc.*, 670 F.Supp.2d 349, 356 (D. Del. 2009) (internal citations and quotation marks omitted). Here, the parties do not appear to dispute that this infringement action could have been properly brought in the Northern District. In any event, the Court finds that the Northern District would be an appropriate venue for the suit, as Theranos is headquartered there and its products are researched, developed, and manufactured there. (D.I. 16 at ¶¶ 3, 5); *see also* 28 U.S.C. § 1400(b)(1).

### b.     Applicable Legal Standards

"[S]ection 1404(a) was intended to vest district courts with broad discretion to determine, on an individualized, case-by-case basis, whether convenience and fairness considerations weigh in favor of transfer." *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 883 (3d Cir. 1995) (citing *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 30-31 (1988)). The Third Circuit has emphasized that "courts normally defer to a plaintiff's choice of forum" and thus that "the plaintiff's choice of venue should not be lightly disturbed." *Jumara*, 55 F.3d at 879, 880 (internal citation and

17

quotation marks omitted). As a result, "a transfer is not to be liberally granted." *Shutte v. Armco Steel Corp.*, 431 F.2d 22, 25 (3d Cir.1970) (internal citation and quotation marks omitted).

The party seeking a transfer has the burden "to establish that a balancing of proper interests weighs in favor of the transfer." *Id.*; *see also Jumara*, 55 F.3d at 879. That burden is a heavy one: "unless the balance of convenience of the parties is strongly in favor of defendant, the plaintiff's choice of forum should prevail." *Shutte*, 431 F.2d at 25 (internal quotation marks and citation omitted); *see also CNH Am. LLC v. Kinzenbaw*, C.A. No. 08-945(GMS), 2009 WL 3737653, \*2 (D. Del. Nov. 9, 2009). Accordingly, "transfer will be denied if the factors are evenly balanced or weigh only slightly in favor of the transfer." *Angiodynamics, Inc. v. Vascular Solutions, Inc.*, C.A. No. 09-554-JJF, 2010 WL 3037478, at \*2 (D. Del. July 30, 2010); *see also Illumina, Inc. v. Complete Genomics, Inc.*, Civil Action No. 10-649, 2010 WL 4818083, at \*2 (D. Del. Nov. 9, 2010).

The Third Circuit has observed that, in undertaking this transfer analysis, "there is no definitive formula or list of . . . factors to consider." *Jumara*, 55 F.3d at 879. Instead, courts must analyze "all relevant factors to determine whether on balance the litigation would more conveniently proceed and the interests of justice be better served by transfer to a different forum." *Id.* Nevertheless, in *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 883 (3d Cir. 1995), the Third Circuit identified a set of private interest and public interest factors that should be taken into account in this analysis (the "*Jumara* factors"). The private factors to consider include:

[1] [The] plaintiff's forum preference as manifested in the original choice, [2] the defendant's preference, [3] whether the claim arose elsewhere, [4] the convenience of the parties as indicated by their relative physical and financial condition, [5] the convenience of the witnesses—but only to the extent that the witnesses may actually be unavailable for trial in one of the fora, [and] [6] the location of books and records (similarly limited to

18

the extent that the files could not be produced in the alternative forum).

The public interest factors to consider include:

[1] [T]he enforceability of the judgment, [2] practical considerations that could make the trial easy, expeditious, or inexpensive, [3] the relative administrative difficulty in the two fora resulting from court congestion, [4] the local interest in deciding local controversies at home, [5] the public policies of the fora, . . . and [6] the familiarity of the trial judge with the applicable state law in diversity cases.

*Id.* at 879–80. The Federal Circuit has indicated that district courts should explicitly consider each of these *Jumara* factors, at least to the extent that the parties make "arguments" about them. *In re Link_A_Media Devices Corp.*, 662 F.3d 1221, 1224 (Fed. Cir. 2011) (noting that it would be "improper to ignore" any of the factors in such a circumstance).[11]

This Court has repeatedly stated, however, that this transfer analysis can be impacted to a significant extent by the prior filing of a related case in the proposed transferee district. To that end, our Court has often noted that a motion to transfer may be granted if "there is a related case which has been first filed or otherwise is the more appropriate vehicle to litigate the issues between the parties." *Intellectual Ventures I LLC v. Checkpoint Software Tech. Ltd.*, 797 F. Supp. 2d 472, 477 (D. Del. 2011) (internal citation and quotation marks omitted); *Am. Bio Medica Corp. v. Peninsula Drug Analysis Co.*, Inc., No. Civ. A. 99-218-SLR, 1999 WL 615175, at *5 (D. Del. Aug. 3, 1999); *see also Mallinckrodt*, 670 F. Supp. 2d at 357–58 ("In an instance where related litigation in a transferee forum involves the same parties, similar technologies, and a common field of prior art, this Court has previously held that transfer is appropriate in the

---

[11]       In analyzing a motion to transfer in a patent case, the law of the regional circuit (here, the Third Circuit), applies. *Intellectual Ventures I LLC v. Checkpoint Software Tech. Ltd.*, 797 F. Supp. 2d 472, 487 n.7 (D. Del. 2011) (citing *Micron Tech., Inc. v. Rambus, Inc.*, 645 F.3d 1311, 1331 (Fed. Cir. 2011)).

interests of justice."). Even when the prior litigation was not considered "first-filed," this Court has considered the impact of that prior litigation in its analysis of various *Jumara* factors. *See, e.g., Brinkmeier v. Exergen Corp.*, Civ. No. 10-176-SLR, 2011 WL 8948, at *3 (D. Del. Jan. 3, 2011); *Cashedge, Inc. v. Yodlee, Inc.*, No. Civ. A. 06-170 JJF, 2006 WL 2038504, at *2-3 (D. Del. July 19, 2006); *Brunswick Corp. v. Precor Inc.*, No. 00-691-GMS, 2000 WL 1876477, at *2-3 (D. Del. Dec. 12, 2000).

## c.     Private Interest Factors

### i.     Plaintiff's choice of forum

The parties disagree as to the appropriate amount of weight to be given to Fuisz Pharma's choice of Delaware as its preferred form. As noted above, that choice (and the rationale behind it) not only represents the first of the *Jumara* private interest factors that I must consider, but it also gives rise to the heightened burden that a defendant faces in showing that transfer is warranted. The Third Circuit has explained that a "plaintiff's choice of a proper forum is a paramount consideration in any determination of a transfer request." *Shutte*, 431 F.2d at 25. Indeed, the "deference afforded plaintiff's choice of forum will apply as long as a plaintiff has selected the forum for some legitimate reason." *Cypress Semiconductor Corp. v. Integrated Circuit Systems, Inc.*, No. 01-199-SLR, 2001 WL 1617186, at *2 (D. Del. Nov. 28, 2001). Nevertheless, while the Third Circuit has placed great "significance" on this factor in the transfer analysis, it should not be "effectively dispositive" of the transfer inquiry. *Link_A_Media*, 662 F.3d at 1223.

Fuisz Pharma contends that its choice of Delaware as a forum should weigh strongly in its favor, consistent with the law of this Circuit. (D.I. 20 at 13) Theranos, on the other hand, argues

20

that Fuisz Pharma's choice of Delaware as its forum should receive no deference, for two primary reasons.[12]

First, Theranos argues that Plaintiff's choice of forum has no connection to the operative facts of the lawsuit, and thus should be afforded "little or no weight." (D.I. 15 at 13-14)   Yet this Court has repeatedly explained that a plaintiff such as Fuisz Pharma has a legitimate and rational reason to sue in federal court in Delaware, as Delaware is its state of incorporation and the place where it has availed itself of the rights, benefits and obligations that Delaware law affords. *See Cellectis,* 2012 WL 1556489 at *5; *Intellectual Ventures I, LLC v. Altera Corp.*, C.A. No. 10-1065-LPS, 2012 WL 297720, at *7 (D. Del. Jan. 24, 2012); *Angiodynamics,* 2010 WL 3037478, at *2.  Theranos' argument that the operative facts of the case have little connection to Delaware may be relevant to other *Jumara* factors.  But in light of the rational reason supporting Plaintiff's selection of Delaware as a forum, Theranos' argument cannot be the basis to eliminate the consideration otherwise afforded to this factor.

Second, Theranos suggests that Fuisz Pharma's choice of forum should be granted lesser weight because that choice was the product of an attempt to manipulate the jurisdictional inquiry. (D.I. 15 at 15); *see also In re Hoffmann-La Roche Inc.*, 587 F.3d 1333, 1337 (Fed. Cir. 2009) (finding that a "plaintiff's attempts to manipulate venue in anticipation of litigation or a motion

---

[12]     In its briefs, Theranos did not argue that Plaintiff's choice of Delaware as a forum should be afforded less weight because Delaware is not Plaintiff's "home turf." When a plaintiff brings its charges in a venue that is not its home forum (or "home turf"), its choice of forum is entitled to "less deference." *Link_A_Media*, 662 F.3d at 1223 (citing cases). The judges of our Court have offered differing opinions as to whether a plaintiff's "home turf" includes its state of incorporation. *Intellectual Ventures I, LLC v. Altera Corp.*, C.A. No. 10-1065-LPS, 2012 WL 297720, at *6 (D. Del. Jan. 24, 2012) (citing cases).  As this issue was not raised by Theranos in its briefing as a basis upon which to grant transfer, I will not consider the issue here.

21

to transfer" should not inure to a plaintiff's benefit in the transfer analysis). Theranos notes that Richard and Joseph Fuisz assigned the '612 patent to Fuisz Pharma (a Delaware corporation they controlled) on the very day the two men were served with the Complaint in the California Action. (D.I. 15 at 15) It alleges that this assignment was a sham—designed simply to allow for a greater chance that Fuisz Pharma's subsequent infringement suit in this District (filed four days later) would enable the Fuiszs to litigate this matter in a forum other than the Northern District. (*Id.*) At oral argument, Fuisz Pharma responded that the assignment of the patent *was* driven by the California Action—but not in a wrongful attempt to manipulate jurisdiction. (D.I. 30 at 80-82)[13] Instead, Fuisz Pharma's counsel asserted that after Richard and Joseph Fuisz were served with the California Action, the two men realized that the '612 patent was still registered in their name, despite the fact that they had long intended to assign the rights to the patent to Fuisz Pharma. (*Id.*) They promptly effected the assignment thereafter. (*Id.*)

The Court acknowledges that the close timing of the filing of the Complaint in the California Action and the subsequent assignment of the patent provide circumstantial evidence in support of the conclusion that jurisdictional gamesmanship motivated the assignment. However, there is little in the factual record as to the rationale behind the assignment. In light of that, and taking into account Plaintiff's assertion of an alternate, good-faith reason for the assignment, I cannot conclude that these facts merit the grant of little or no weight to plaintiff's choice of forum.

For these reasons, this factor weighs against transfer.

_____

[13]     In its Answering Brief, Fuisz Pharma did not set out the rationale behind this assignment, nor did it point to any portion of the record that shed light on the reason for it. (D.I. 20)

## ii.    Defendant's forum preference

Theranos prefers to litigate in the Northern District. There are legitimate reasons to support that preference, which will be discussed in more detail below. Those reasons include: (1) Theranos' principal place of business is located in the Northern District, along with its research, development and manufacturing resources; (2) its services and products are developed there; (3) many of its employees (some who are likely to be witnesses in the case) live there; and (4) many documents likely to be important to the case are located there. (D.I. 1 at ¶ 3; D.I. 15 at 4-5; D.I. 16 at ¶¶ 3–6); *see also Microsoft Corp. v. Geotag*, Civil Action No. 11-175-RGA, 2012 WL 114128, at *2 (D. Del. Jan. 13, 2012); *Wacoh Co. v. Kionix Inc.*, Civil Action No. 10-617-RGA, 2012 WL 70673, at *3 (D. Del. Jan. 9, 2012).

This factor weighs in favor of transfer.

## iii.    Whether the claim arose elsewhere

"[A]s a matter of law, a claim for patent infringement arises wherever someone has committed acts of infringement, to wit, 'makes, uses, offers to sell, or sells any patented invention' without authority." *Cellectis*, 2012 WL 1556489, at *5 (quoting 35 U.S.C. § 271). In this case, Plaintiff has not alleged that Theranos made, used, offered to sell or sold any allegedly infringing products in Delaware—nor do any other relevant operative events regarding the case appear to have taken place in Delaware.[14]

Theranos argues that the Northern District is the "center of any allegedly infringing conduct" because Theranos developed its technology there and maintains its laboratories,

---

[14]    Theranos asserts that it has not sold or manufactured any systems in Delaware. (D.I. 16 at ¶ 15)  Fuisz Pharma makes no assertion to the contrary.

manufacturing and business operations there. (D.I. 1 at ¶ 3; D.I. 15 at 16; D.I. 16 at ¶ 3); *see also Wacoh Co.*, 2012 WL 70673, at *4 ("To some extent, the claims arose where the allegedly infringing products were designed and manufactured."). Fuisz Pharma did not discuss this factor in its Answering Brief, nor did it refute Theranos' claim in this regard. Because it appears that the operative events giving rise to the Plaintiff's claim of infringement have a strong connection to the Northern District (and no articulated connection to Delaware), this factor weighs in favor of transfer. *See Altera*, 2012 WL 297720, at *8 (finding this factor to weigh in favor of transfer where, *inter alia*, some research and development of allegedly infringing products occurred in proposed transferee district and none in Delaware).

### iv.   Convenience of the parties as indicated by their relative physical and financial condition

In assessing the next private interest factor—"the convenience of the parties as indicated by their relative physical and financial condition"— this Court has traditionally examined a number of factors. These have frequently included:  (1) the parties' physical location; (2) the associated logistical and operational costs to the parties' employees in traveling to Delaware (as opposed to the proposed transferee district) for litigation purposes; and (3) the relative ability of each party to bear these costs in light of its size and financial wherewithal. *Geotag*, 2012 WL 114128, at *2; *L'Athene, Inc. v. EarthSpring LLC*, 570 F. Supp. 2d 588, 595 (D. Del. 2008).

Theranos argues that litigating in California would be more convenient for the parties, not only because its operations and employees are primarily located there, but also because the parties are already engaged in litigation there. (D.I. 15 at 16)  From Theranos' perspective, requiring certain of its key employees to travel across the country for this litigation (were the case

24

to proceed to trial), would "tak[e] significant time away from their work at Theranos." (*Id.* at 17) Theranos also asserts that (1) because Richard Fuisz is a resident of California; and (2) because Joseph Fuisz is a resident of Florida (which purportedly renders the Northern District "no more inconvenient" a locale for him to travel to than Delaware); then (3) the physical burdens of travel to the Northern District (as compared to Delaware) on the two men who control Plaintiff are not great. (D.I. 23 at 7-8) Lastly, Theranos cites certain publicly available documents for the proposition that Richard and Joseph Fuisz sold Fuisz Technologies in 1999 for a large sum and that they are financially well off, suggesting that this means Fuisz Pharma has the financial resources to allow for travel to the Northern District. (*Id.* at 8)

Fuisz Pharma responds that transferring this action to California will only convenience Theranos. It points out that its principal place of business is in Florida, which makes it much more convenient for it to travel to Delaware, another East-coast state, than to travel across the country to California. (D.I. 20 at 15) Fuisz Pharma also cites certain exhibits for the proposition that Theranos had approximately 70 employees as of March 2009; it suggests this contrasts with Fuisz Pharma's size, as Fuisz Pharma is a "small company with limited resources." (*Id.* at 15)

After analyzing these arguments, I find that they do not weigh in favor of one side or the other. In terms of the parties' relative physical location in relation to the prospective venues, Delaware appears a somewhat more convenient venue for Fuisz Pharma than the Northern District (in light of the respective districts' physical proximity to Florida); the Northern District is clearly more convenient for Theranos. The impact of the physical proximity of Fuisz Pharma to Delaware (as compared to the Northern District) is mitigated a bit, however, by the fact that Fuisz Pharma will already be required to litigate the first-filed lawsuit in the Northern District.

*Corixa*, 2002 WL 265094, at *3 (finding this factor to weigh in favor of transfer in part because a first-filed case had been brought in the proposed transferee district, and "[b]ringing witnesses and relevant documents to only one location, here [the proposed transferee district] minimizes the level of disruption caused to all parties by the litigation"); *see also Dippold-Harmon Enter., Inc. v. Lowe's Companies, Inc.*, No. 01-532-GMS, 2001 WL 1414868, at *5 (D. Del. Nov. 13, 2001) (same).[15] Further, although any litigation may bring with it the prospect of inconvenience to a party or its employees, there is nothing in the record that demonstrates that litigating in either forum-at-issue would impose a serious or undue logistical or operational burden on either party.[16] Lastly, based on the limited (and dated) information in the record regarding the relative size and financial health of the two parties, I cannot draw the conclusion that there would be a disproportionate financial impact on one side or the other, were that party to be required to litigate in Delaware (as opposed to in the Northern District). While neither party is a large, multi-national corporation, neither has made an effective case that its size or financial status gives rise to a real disability that should be taken into account here.

Perhaps for these reasons, at oral argument, Theranos' counsel acknowledged that this

---

[15]     Each side asserts that the other has an office on the opposite coast, and that this makes a difference in the analysis as to whether Delaware is a convenient venue. Theranos, citing an old Fuisz Pharma press release, claims that Fuisz Pharma has an office in California, (D.I. 15 at 17); Fuisz Pharma denies this, (D.I. 20 at 15). Fuisz Pharma notes that Theranos has a Massachusetts office, (D.I. 20 at 15); Theranos responds that the office only opened in 2011 and that just one employee works there, (D.I. 23 at 8). The limited evidence in the record regarding the size or (in the case of Fuisz Pharma) even the existence of these offices counsels that their presence should not have an impact on my analysis.

[16]     Our Court has also noted that there is a seeming incongruity when a party such as Theranos, which has chosen to incorporate in Delaware, now asserts that the state is an inconvenient locale in which to defend a lawsuit. *Altera*, 2012 WL 297720, at *8 (citing *Micron Technology*, 645 F.3d at 1332). This further weighs against a finding in Theranos' favor here.

factor should not weigh heavily in the transfer analysis. (D.I. 30 at 40-41 (noting that this was not a factor "that should drive this case")) As a result, I find this factor to be neutral.

### v.   Convenience of the witnesses to the extent that they may actually be unavailable for trial in one of the fora

The "convenience of the witnesses" is the next factor, "but only to the extent that the witnesses may actually be unavailable for trial in one of the fora." *Jumara*, 55 F.3d at 879. "[I]n reviewing a motion to transfer, courts "frequently look to the availability of witnesses as an important factor, as it can be relevant to protecting a defendant's opportunity to put on its case with witnesses who will appear in person at the trial." *ADE Corp. v. KLA-Tencor Corp.*, 138 F. Supp. 2d 565, 569 (D. Del. 2001). In explaining how the concerns implicated by this factor relate to the different types of witnesses who might testify at trial, this Court has noted:

Party witnesses or witnesses who are employed by a party carry no weight in the "balance of convenience" analysis since each party is able, indeed, obligated to procure the attendance of its own employees for trial. . . . Expert witnesses or witnesses who are retained by a party to testify carry little weight in determining where the "balance of convenience" lies (especially in an action for patent infringement) because they are "usually selected [on the basis] of their reputation and special knowledge without regard to their residences and are presumably well compensated for their attendance, labor and inconvenience, if any.". . . Fact witnesses who possess first-hand knowledge of the events giving rise to the lawsuit, however, have traditionally weighed quite heavily in the "balance of convenience" analysis.

*Affymetrix, Inc. v. Synteni, Inc.*, 28 F. Supp. 2d 192, 203 (D. Del. 1998) (citations omitted). Of particular concern, then, are fact witnesses who may not appear of their own volition in the venue-at-issue and who could not be compelled to appear by subpoena pursuant to Federal Rule of Civil Procedure 45. *ADE Corp.*, 138 F. Supp. 2d at 569.

Theranos argues that this factor favors transfer because there are several third party witnesses, "who are not currently employed by Theranos, but who were involved in the

development of Theranos' intellectual property and are named inventors on relevant Theranos provisional patent applications and patents, [who] are located in California." (D.I. 15 at 18) Theranos asserts that these former employees "no longer have a relationship with Theranos" and are outside of the subpoena power of this Court, rendering their attendance at trial uncertain. (D.I. 23 at 8; *see also* D.I. 16 at ¶¶ 6-12) In response, Fuisz Pharma argues that this factor is neutral, because its third party witnesses, including the attorneys who prosecuted the patent-in-suit and who formerly worked with John Fuisz, are located in Virginia and Washington D.C.—within this Court's subpoena power and outside of the subpoena power of the California Court. (D.I. 20 at 15-16)

I do not believe this factor favors either side. As an initial matter, our Court has noted that the practical impact of this factor is particularly limited, in light of the fact that so few civil cases today proceed to trial (and at trial, so few fact witnesses testify live). *Cellectis*, 2012 WL 1556489, at *6 & n.6; *Altera*, 2012 WL 297720, at *10. But even more significantly, although both sides have mentioned a few third party witnesses who might be important witnesses at trial, neither side provides any evidence that those witnesses would be unwilling to testify in the respective venues. (D.I. 30 at 42 (counsel for Theranos acknowledging the lack of such evidence); *id.* at 89 (counsel for Fuisz Pharma acknowledging same); *see also* D.I. 20 at 16; D.I. 23 at 9) These identified witnesses are former colleagues or business associates of the respective parties' owners—the kind of persons who might well be expected to voluntarily testify on behalf of the parties. In my view, absent some concrete evidentiary showing that these individuals would be unlikely to testify, neither side can credibly claim that this factor should turn in its favor. *Tessera, Inc. v. Sony Elec. Inc.*, Civil No. 10-838 (RMB) (KW), 2012 WL 1107706, at *6

28

(D. Del. Mar. 30, 2012) (finding that "the better approach [to this inquiry] is to recognize that witnesses have and will appear here without having to be subpoenaed," absent some evidence put forward to the contrary) (citing cases).

This factor is therefore neutral.

### vi.     Location of books and records

Next the Court considers "the location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum)." *Jumara*, 55 F.3d at 879. "In patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer. Consequently, the place where the defendant's documents are kept weighs in favor of transfer to that location." *In re Genentech, Inc.*, 566 F.3d 1338, 1345 (Fed. Cir. 2009) (citation and quotation marks omitted). This factor is commonly given little weight, however, as technological advances have "shortened the time it takes to transfer information, reduced the bulk or size of documents or things on which information is recorded . . . and have lowered the cost of moving that information from one place to another." *Cypress Semiconductor*, 2001 WL 1617186, at *3 (internal quotation marks and citations omitted); *see also Cellectis*, 2012 WL 1556489, at *6; *ADE Corp.*, 138 F. Supp. 2d at 571 ("With new technologies for storing and transmitting information, the burden of gathering and transmitting documents 3,000 miles is probably not significantly more than it is to transport them 30 miles."). While the practical reality of these advances in technology may alter the weight given to this factor, a court must not ignore the factor entirely. *Link_A_Media*, 662 F.3d at 1224.

Citing these principles of law, Theranos argues that this factor favors transfer because the documents related to the research and development of Theranos' products are located in the

proposed transferee forum and will already be produced there in connection with the California Action. (D.I. 15 at 18-19)  In response, Fuisz Pharma argues that "[w]hile it may be true that Theranos has paper documents that may be located in the Northern District," the minimal burden of producing such documents electronically render this factor neutral.  (D.I. 20 at 17)

On the one hand, it appears to the Court that there is no significant practical hurdle to collecting, scanning and electronically (or physically) producing the relevant books and records in this case.  Even Theranos' counsel admitted as much at oral argument.  (D.I. 30 at 44-45 (acknowledging that there is no "overriding reason why in this particular case [discovery documents] can't be Xeroxed, or you know, transmitted over" to another district))  On the other hand, it appears undisputed that while some relevant documentation regarding the claims and defenses in this case is located elsewhere, more of that material is located in the Northern District than anywhere else.  Moreover, some significant portion (though not all) of those documents will likely be produced in the California Action.  Thus, there would be some obvious logistical and practical synergies in having those documents utilized in one district, not two, were this case to be transferred to the Northern District.  *Corixa Corp.*, 2002 WL 265094, at * 4; *Dippold-Harmon*, 2001 WL 1414868, at *7.

Taking all of these factors into account, along with the guidance provided by the Federal Circuit on this question, I find that this factor should favor transfer, but not strongly so.

### d.     Public Interest Factors

#### i.     Enforceability of judgment

Theranos suggests that "the enforceability of any hypothetical judgment favors California" because "the manufacturing facilities and vast majority of resources of Theranos are

located in California[.]" (D.I. 15 at 19)  The Court can discern no merit in this claim, as neither party has offered any legitimate reason why a judgment entered in either district would not be given full faith and credit. *In re DVI Inc.*, No. 03-12656 MFW, Civ. A. 04-170 JJF, 2004 WL 1498593, at *3 (D. Del. June 23, 2004) (citing *Hechinger Inv. Co. of Delaware, Inc. v. M.G.H.*, 288 B.R. 398, 403 (Bankr. D. Del. 2003)).  This factor is neutral.

### ii.     Practical considerations that could make the trial easy, expeditious, or inexpensive

The Court next considers the "practical considerations that could make the trial easy, expeditious, or inexpensive." *Jumara*, 55 F.3d at 879.  Here, the primary practical consideration at play is the existence of the California Action.  In examining this *Jumara* factor, our Court has often cited the existence of related lawsuits in one of the fora at issue as being an important "practical consideration" to be taken into account. *Altera*, 2012 WL 297720, at *12; *Cashedge*, 2006 WL 2038504, at *2; *Brunswick*, 2000 WL 1876477, at *3.

As discussed above, the subject matter of the California Action overlaps significantly with this action in several respects.  Though the two cases are not identical, in that there are certain legal claims in the California Action that are not raised here (and vice versa), they involve the same entities, the same patent and many of the same factual and legal disputes.  Absent dismissal, the California Action will go forward.[17]  Were the parties to also litigate many of the

---

[17]     At times in its Answering Brief, Fuisz Pharma argued that the California Action is legally problematic and likely to be dismissed—suggesting that since the lawsuit would soon be thrown out, no practical weight should be given to its current existence. (D.I. 20 at 6-7)  Yet without the benefit of presiding over that action, or having the ability (as the California Court will) to examine the full breadth of the parties' factual and legal arguments in that case, I do not believe that I am well-equipped to gauge the likelihood of the success or failure of the claims at issue there.

same issues here, this would generate significant expense, inefficiency and the prospect of inconsistent judgements. For these reasons, this factor weighs in favor of transfer.

### iii.    Administrative difficulties in getting the case to trial

The next factor is the "relative administrative difficulty in the two fora resulting from court congestion." *Jumara*, 55 F.3d at 879. Theranos asserts that this factor favors the Northern District, in that "the most recent Federal Judicial Caseload statistics show that in the Northern District of California, on average, cases proceed to trial more quickly than they do in the District of Delaware." (D.I. 15 at 19)  Yet given that, for the first time in years, this Court now has a full bench of four U.S. District Judges (and, for the first time ever, three U.S. Magistrate Judges), I am not persuaded by Theranos' argument that difficulties relating to court congestion favor transfer. *Altera*, 2012 WL 297720, at \*12 ("Particularly given that this Court—for the first time nearly five years—no longer has a judicial vacancy, the Court is not persuaded that administrative difficulties due to court congestion favor transfer.").

The Court finds this factor to be neutral.

### iv.    Local interests in deciding local controversies at home

In patent litigation, the local interest factor is typically neutral, "because patent issues do not give rise to a local controversy or implicate local interests." *TriStrata Tech., Inc. v. Emulgen Labs., Inc.*, 537 F. Supp. 2d 635, 643 (D. Del. 2008); *see also In re Hoffman–La Roche Inc.*, 587 F.3d at 1338 ("While the sale of an accused product offered nationwide does not give rise to a substantial interest in any single venue, if there are significant connections between a particular venue and the events that gave rise to a suit, this factor should be weighed in that venue's favor.").

Theranos suggests, and the Court agrees, that the Northern District nevertheless has a

local interest regarding this action, in that this suit relates to infringement that allegedly occurred

in that district, by Theranos' employees who work in that district. However, this case also

involves litigation solely between corporate citizens of Delaware, and Delaware has a real local

interest in the outcome of a significant legal dispute between its corporate citizens. *Altera*, 2012

WL 297720, at *12; *Autodesk Can. Co. v. Assimilate, Inc.*, No. 08-587-SLR-LPS, 2009 WL

3151026, at *9 (D. Del. Sept. 29, 2009) ("Delaware clearly has a substantial interest in

addressing lawsuits brought against Delaware corporations.").

On balance, then, the Court finds this factor to be neutral.

### v.  Public policy of the fora

Neither party makes an explicit argument that the next factor, regarding the public policy

of the respective fora, should impact the transfer analysis. In light of that, I find this factor to be

neutral. *Helicos Biosciences Corp. v. Illumina, Inc.*, Civ. No. 10-735-SLR, 2012 WL 1556390,

at *7 (D. Del. May 3, 2012) (noting that, in light of the fact that neither party addressed this

factor, it would be accorded no weight in the Court's analysis).

### vi.  Familiarity of the trial judge with applicable state law in diversity cases

This is not a diversity case. Instead, as the Federal Circuit has observed, "[p]atent claims

are governed by federal law, and as such both [courts are] capable of applying patent law to

infringement claims." *In re TS Tech USA Corp.*, 551 F.3d 1315, 1320 (Fed. Cir. 2008) (internal

quotation marks omitted); *see also Link_A_Media*, 662 F.3d at 1224 (same). This factor, then, is

neutral.

### e.      Conclusion Regarding Impact of Transfer Factors

As is evident from the discussion of the *Jumara* factors above, the existence of the first-filed California Action has a significant impact on the balancing of the public and private interests in this case.  In sum, the following interests weigh in favor of transfer:  Defendant's forum preference, whether the claim arose elsewhere, the location of books and records (to a limited degree), and practical considerations.  The Plaintiff's choice of forum is the only interest that weighs against transfer.  Although that choice is entitled to substantial weight, after considering all of the *Jumara* factors, I find that the balance of those factors weighs strongly in favor of transfer.

### 2.      Recommendation Regarding Whether the Instant Case Should Be Stayed, Dismissed or Transferred

With the result of the transfer analysis in mind, the Court now turns back to the question of whether this case should be stayed, dismissed or transferred in light of the California Action.  The Court first notes that neither party strongly suggests that a stay is the appropriate remedy.  Theranos seeks that remedy only in the alternative, and makes no argument in favor of a stay.  (D.I. 15 at 20; D.I. 23 at 10)  For its part, Fuisz Pharma also does not directly advocate for a stay of this litigation.  Instead, it notes that Theranos has "file copied claims with the PTO on November 2, 2011 in an effort to invoke an interference of the '612 Patent and establish priority over it" and suggests that "[a]t most, then, if the Patent Office declares an interference, this action should also be stayed, but only in favor of that interference proceeding."  (D.I. 20 at 19)  There is little in the record about the existence or the status of that PTO action, but it appears clear that the PTO has not yet declared an interference.  (D.I. 30 at 52-54 (Theranos' counsel

34

noting that no interference had been declared by PTO); *id.* at 95 (Fuisz Pharma's counsel acknowledging that it did not "make any sense" to stay the case at this stage in favor of the PTO action)) Moreover, as the California Action is still in its early stages, it does not make sense to stay this action pending a final judgment in that case. A resolution of the California Action could be a long time in coming, and it is impractical (if not impossible), for this Court to predict how or when the California Action will end. For all these reasons, staying the instant case would not serve a practical purpose.

As previously noted, the transfer analysis resulted in a finding that the *Jumara* factors weighed strongly in favor of transfer, such that the Northern District would be an appropriate venue for this case. In addition, the allegations in this case (as with those in the California Action) are very serious—involving not only claims of patent infringement, but also assertions of the theft of intellectual property from a law firm and its client (and the emphatic denial that such conduct ever took place). It may be that if the instant case were to proceed, it would involve some smaller amount of factual and/or legal matters that would not otherwise be raised in the California Action. Transferring (rather than dismissing) the instant case to the Northern District would help ensure that the full spectrum of these serious charges are fully aired in federal court. *Corporate Employ. Resources, Inc. v. Boone*, Civ. No. 11-408-SLR, 2011 WL 5335467, at \*5 (D. Del. Nov. 4, 2011). I therefore recommend that the instant case be transferred to the Northern District.

## III.   CONCLUSION

For the foregoing reasons, I recommend that the Court GRANT-IN-PART Theranos' Motion and transfer this matter to the Northern District of California.

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B), Fed. R. Civ. P. 72(b)(1), and D. Del. LR 72.1.  The parties may serve and file specific written objections within fourteen (14) days after being served with a copy of this Report and Recommendation. Fed. R. Civ. P. 72(b)(2).  The failure of a party to object to legal conclusions may result in the loss of the right to de novo review in the district court.  *See Henderson v. Carlson*, 812 F.2d 874, 878–79 (3d Cir. 1987); *Sincavage v. Barnhart*, 171 F. App'x 924, 925 n.1 (3d Cir. 2006).

The parties are directed to the Court's Standing Order In Non-Pro Se Matters For Objections Filed Under Fed. R. Civ. P. 72, dated November 16, 2009, a copy of which is available on the District Court's website, located at http://www.ded.uscourts.gov.

Dated: May 18, 2012

_____

Christopher J. Burke
UNITED STATES MAGISTRATE JUDGE